
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 13, 2016 Session

**STATE OF TENNESSEE v. WESTLEY A. ALBRIGHT**

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2013-CR-206    David D. Wolfe, Judge**

_____

**No. M2016-01217-CCA-R3-CD**

_____

The defendant, Westley A. Albright, pled nolo contendere to one count of soliciting a minor in violation of Tennessee Code Annotated section 39-13-528, a Class E felony, for which he received a one-year suspended sentence and deferred judicial diversion.  As a condition of probation, the defendant agreed to participate in therapeutic treatment for the duration of probation or until favorably discharged.  Prior to the conclusion of the one-year suspended sentence, the defendant's treatment provider discharged him for failure to comply with the goals of his treatment program.  Following service of a probation warrant and a hearing, the trial court revoked the defendant's deferred diversion and extended his probation for six months to allow for the completion of treatment.  On appeal, the defendant argues: (1) the trial court violated his due process rights by failing to advise him at the time he entered his nolo contendere plea that, as a condition of probation, he would be required to confess to the solicitation of a minor; (2) the trial court violated his due process rights by relying on a probation rule not referenced in the revocation warrant; and (3) the trial court erred when revoking his deferred diversion despite his completion of the objective requirements of the sex offender treatment program.  Upon review, we affirm the findings of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined. CAMILLE R. MCMULLEN, J., concurring in results only.

Timothy V. Potter, Dickson, Tennessee, for the appellant, Westley A. Albright.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Ray Crouch, District Attorney General; and Sarah Wojnarowski, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual and Procedural History*

On April 23, 2013, a Dickson County Grand Jury returned a two-count indictment charging the defendant with solicitation of a minor to commit aggravated statutory rape in violation of Tennessee Code Annotated section 39-13-528, a Class E felony, and especially aggravated sexual exploitation of a minor in violation of Tennessee Code Annotated section 39-17-1005, a Class C felony. These charges arose as the result of the defendant's text messages and email exchanges with an undercover detective from the Dickson County Sheriff's Office who was posing as the mother of a thirteen-year-old girl. According to the Affidavit of Complaint, the defendant expressed a desire to engage in sexual acts with the mother and her minor daughter and arranged a meeting at a local ball field for that purpose. In advance of the meeting, the defendant sent a photograph of himself to the undercover detective and requested nude photographs of the mother and minor. When questioned by the detective, the defendant admitted to the communications but stated he was only going to the ball field to obtain the license plate number of the minor's mother.

On September 16, 2015, the defendant entered a plea of nolo contendere to the solicitation of a minor charge in exchange for the dismissal of the aggravated sexual exploitation of a minor charge and a suspended sentence of one year. After the successful conclusion of the defendant's one-year probationary period, the solicitation of a minor charge was to be dismissed but not be expunged from his record.

During the plea hearing, the trial judge questioned the defendant extensively regarding his understanding of the plea, and the defendant acknowledged he understood his right to trial, the requirements of his probation, and the ramifications of his plea. The defendant admitted the plea was voluntary. The defendant additionally acknowledged the terms of his probation by signing an order indicating, in part, that he would "observe any special conditions imposed by the Court as listed below: register as a sex offender [and] pay court costs/fines" and "abide by the Specialized Probation Conditions for Sex Offenders as adopted by the Tennessee Department of Correction." The defendant then initialed each specialized condition of probation separately, including the requirements that he "attend, participate in, and pay for treatment or counseling with an approved treatment provider" and "continue in such treatment as instructed for the duration of supervision unless [his] treatment provider, in consultation with [his] Officer, instructs [him] in writing that [he has] satisfactorily completed treatment."

- 2 -

The defendant subsequently selected James Barry Welch from a list of sexual offender treatment providers approved by the State to provide the mandated treatment. The goal of the treatment program was one-hundred percent honesty, community safety, and no more victims. In furtherance of this goal, Mr. Welch conducted an assessment and developed a treatment plan that included group therapy. The defendant signed off on the objectives listed in the treatment plan, including:

> Client will admit to 100 percent elements of the offense as described by his victims through the official victims' statement . . . Client will complete a written statement of responsibility describing all elements of his crime, to include grooming and cover-up actions . . . Client will complete a sexual autobiography which will include all deviant or illegal sexual fantasies or behaviors, the veracity and completeness which will be verified by polygraph examination or other means . . . Client will complete a sexual history following that.

According to Mr. Welch, it is typical for patients to initially deny wrongdoing. However, once treatment begins and they are faced with their treatment goals, most patients admit to the charges against them and move forward. The defendant did not do this. As his treatment progressed, the defendant continued to maintain his innocence. The defendant told Mr. Welch and the group that he never intended to engage in sexual acts with a minor. Rather, he claimed he had a stalker and searched motherless.com, a website notorious for incest, to locate and confront the stalker. He then arranged a meeting with this alleged stalker so he could obtain her license plate number and turn it over to authorities. When the defendant arrived for the meeting, he discovered the person he had been communicating with was an undercover police officer, and he was arrested.

Mr. Welch and the group confronted the defendant regarding the weaknesses in his story. They asked him questions like, "Why would you tell somebody that you want to do an illegal sex act with a child if you didn't intend to do that?" The defendant refused to offer any further explanation. According to Mr. Welch, all evidence indicated the defendant was lying about why he went to motherless.com and arranged the meeting, so he asked the defendant to undergo a specific-incident polygraph examination. Mr. Welch told the defendant that if he passed the examination, he would send a favorable report to the defendant's probation officer indicating there is no need for treatment. Otherwise, he would unfavorably discharge the defendant due to his failure to comply with the requirements of the program.

The defendant underwent the specific-incident polygraph examination and failed. Mr. Welch subsequently gave the defendant the opportunity to return to the group and explain why he failed. If the defendant had admitted to lying, he could have stayed and

received treatment. Instead, the defendant continued to deny he intended to engage in sexual acts with a minor. Mr. Welch then informed the defendant in front of the group that he was being discharged from treatment. The other group members begged the defendant to tell the truth so he could stay. At that point, the defendant changed his story and indicated he intended to have sex with the minor's mother, not the minor. Mr. Welch proceeded with discharging the defendant because engaging in sexual activity with a consenting adult does not violate the law or require treatment.

According to Mr. Welch, the defendant had a problem that needed to be addressed, but the defendant was not willing to address it. For example, participation in group therapy is a required component of treatment. While the defendant attended all scheduled group meetings, he was hesitant to speak and would "dance around questions." Additionally, Mr. Welch worked with the group on cognitive distortion and issued homework assignments on the topic. While these assignments were not mandatory, Mr. Welch spoke to the defendant about them and informed the defendant they could be completed without admitting guilt. The defendant still did not complete them. Mr. Welch testified he could not treat the defendant if he would not admit he had a problem or at least show progress towards being able to admit he had a problem. Ultimately, Mr. Welch discharged the defendant due to his "failure to comply with his treatment program." Due to the defendant's discharge from treatment, he never progressed to the point of completing a sexual autobiography to be verified by polygraph examination or completing a sexual history.

After Mr. Welch discharged the defendant from treatment, he and another therapist wrote a letter to Jessica Forbes, the defendant's probation officer, notifying her that the defendant had been discharged from the program due to noncompliance with treatment goals, explaining: "Although he appeared to be in compliance with supervision and attended all required treatment groups, he was not able to give a credible statement of responsibility for his offense of conviction." Ms. Forbes requested a revocation warrant by completing a Diversion Violation Report wherein she indicated the defendant was in violation of Probation Rule Number 12, mandating the defendant "will abide by the Specialized Probation Conditions for Sex Offenders as adopted by the Tennessee Department of Correction." Ms. Forbes then referenced Special Condition Number 3, which states:

> I will attend, participate in, and pay for treatment or counseling with an approved treatment provider as deemed necessary by the Board, the Court, or my Officer. I will continue in such treatment as instructed for the duration of supervision unless my treatment provider, in consultation with my Officer, instructs me in writing that I have satisfactorily completed treatment.

Thereafter, the trial court issued a revocation warrant on February 17, 2016, indicating the defendant violated the terms of his probation when he was discharged from sex offender treatment for noncompliance with treatment goals in violation of Probation Rule Number 12 and Special Condition Number 3. In response, the defendant filed a "Motion to be Relieved from Certain Conditions of Probation and to Avoid Unnecessary VOP Allegation," arguing he received probation as a result of entering a no contest plea wherein he was not required to admit to the facts asserted against him. The completion of a sex offender assessment was one of the many conditions of probation, and the assessment required the defendant to participate in a sex offender treatment class. Mr. Welch, the therapist conducting the class, required the defendant to admit to the facts alleged by the State against him, but the defendant would not admit the facts because they are false. Due to the defendant's position that the facts asserted by the State are untrue, he requested that the trial court relieve him of the condition of completing sex offender treatment as a condition of his probation.

The trial court subsequently held a hearing during which it considered both the revocation warrant and the defendant's motion. After hearing arguments from the attorneys and testimony from Ms. Forbes and Mr. Welch, the trial court found the defendant to be in violation of his probation and denied the defendant's motion. When doing so, the trial court noted that Probation Rule Number 10 required the defendant to comply with any special conditions imposed by the court, including registration as a sex offender. The trial court then stated, "The only requirement he had was to complete successfully the sex offender registry and his probation. The sex offender registry requires the therapy that is described in this Court. It is required that he successfully complete it, and the Court finds he did not." Accordingly, the trial court found the defendant violated his conditional plea and revoked his deferred diversion, making the conviction permanent. The trial court further extended the defendant's probation for six months so he could complete treatment.

Following the hearing, the trial court entered a written order memorializing its ruling, including these findings of fact and conclusions of law:

2. Following entry of his plea, the [d]efendant signed a form given to him by his probation officer entitled "*Specialized Probation Conditions for Sex Offenders*." As part of said conditions, the [d]efendant acknowledged that he "will attend, participate in, and pay for treatment or counseling with an approved treatment provider as deemed necessary by the Board, the Court or my Officer. I will continue in such treatment as instructed for the duration of my supervision unless my treatment provider, in consultation

with my Officer, instructs me in writing that I have satisfactorily completed treatment."

3. The [d]efendant selected an approved treatment program with an entity known as Associates for Sexual Assault Prevention (ASAP).

4. The [d]efendant followed all directives and participated in the program by attending all meetings and complying with all directions. However, the [d]efendant's sexual offender treatment provider, J. Barry Welch, made the decision to discharge the defendant from the program because the determination was made by him that the [d]efendant was not truthful regarding his intentions for committing the crime that he was convicted of committing. Specifically, Mr. Welch wrote a letter to the [d]efendant's probation officer which stated in part, "Although he appeared to be in compliance with supervision and attended all required treatment groups, he was not able to give a credible statement of responsibility for his offense of conviction."

. . .

6. This Court believes that the [d]efendant has in fact been dishonest with his sexual offender treatment provider regarding his intentions for committing the offense of solicitation of a minor. The Court believes the [d]efendant has not been truthful about his motivations for committing the crime.

Based on these findings, the trial court ordered the defendant is "adjudicated **GUILTY** of violating his court ordered probation; therefore, the [d]efendant's judicial diversion in accordance with T.C.A. § 40-35-313 is hereby **REVOKED** and the [d]efendant is hereby adjudicated **GUILTY** of the [C]lass E felony which he plead[ed] to at the time his plea agreement was entered" and extended the defendant's probation for six months to allow compliance with the Specialized Probation Conditions for Sex Offenders. This timely appeal followed.

### *Analysis*

On appeal, the defendant argues: (1) the trial court violated his due process rights by failing to advise him at the time he entered his nolo contendere plea that, as a condition of his probation, he would be required to confess to the solicitation of a minor; (2) the trial court violated his due process rights by relying on a probation rule not referenced in the revocation warrant; and (3) the trial court erred when revoking his

deferred judicial diversion despite his completion of the objective requirements of the sex offender treatment program. In response, the State contends: (1) the defendant waived the first issue by raising it for the first time on appeal; (2) the evidence supports probation revocation based on the conditions included in the revocation warrant; and (3) the trial court properly revoked the defendant's probation and diversion status due to the defendant's failure to satisfactorily participate in the treatment program. Upon review, we affirm the findings of the trial court.

## I.      Notice of Admitting Guilt

The defendant first asserts the trial court erred when revoking his deferred diversion because the trial court failed to provide notice the confession of guilt was a condition of his probation. In response, the State contends the defendant waived this issue on appeal by failing to complain of lack of notice at the probation revocation hearing. We conclude the issue is properly before this Court but lacks merit.

"[A] defendant who is granted probation has a liberty interest that is protected by due process of law. Also, it is fundamental to our system of justice through due process that persons who are to suffer penal sanctions must have reasonable notice of the conduct that is prohibited." *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997) (citations omitted). Defendants are presumed to be on notice that, as a condition of probation, they are required to comply with the criminal laws this state. *Id.* Revocation of probation is subject to an abuse of discretion standard of review. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991).

Prior to his probation revocation hearing, the defendant filed a motion to be relieved of the requirement that he complete sex offender treatment because "confession should not be a condition of [his] probation." He further addressed this argument during the probation revocation hearing. This was enough to preserve the notice issue for appeal.

With respect to notice of the terms of his probation, including the requirement he participate in sex offender treatment, the defendant testified during his plea hearing that he understood the terms of his probation. He further acknowledged the terms of his probation by signing an order indicating, in part, that he would "observe any special conditions imposed by the Court as listed below: register as a sex offender [and] pay court costs/fines" and "abide by the Specialized Probation Conditions for Sex Offenders as adopted by the Tennessee Department of Correction." The defendant then initialed each specialized condition of probation separately, including the requirements that he "attend, participate in, and pay for treatment or counseling with an approved treatment provider" and "continue in such treatment as instructed for the duration of supervision

unless [his] treatment provider, in consultation with [his] Officer, instructs [him] in writing that [he has] satisfactorily completed treatment."

Subsequent to the defendant's receipt and recognition of the terms of his probation, he entered into the mandated sexual offender treatment. Ultimately, the defendant was unfavorably discharged by Mr. Welch due to his failure to completely participate in treatment by providing a credible statement of responsibility for his actions. At the revocation hearing, Mr. Welch clarified that had the defendant been able to pass a specific-incident polygraph examination in which he denied intending to solicit sex from a minor, he would have instead sent a favorable report to the defendant's probation officer indicating no further need for treatment. The defendant, however, was unable to do so. The defendant was then given multiple opportunities to explain his actions to Mr. Welch and the treatment group but refused. The defendant's actions were tantamount to failing to fully participate in the program, so he was unfavorably discharged by Mr. Welch prior to the completion of his probation.

In its order revoking the defendant's probation, the trial court found the defendant was dishonest during treatment regarding his intentions when sending messages to the undercover agent via motherless.com. The trial court further found Mr. Welch discharged the defendant from treatment due to this dishonesty, so he was guilty of violating his probation. Based on our review of the record, the defendant was sufficiently on notice that he had to attend, participate in, and pay for sexual offender treatment for the duration of his probation or until satisfactory completion of treatment. While it would have been helpful for the Specialized Probation Conditions for Sex Offenders to include a more detailed description of the requisite treatment or counseling, a reasonable person would believe this treatment or counseling requires honesty regarding the underlying actions of the defendant. The defendant is not entitled to relief on the issue.

We note that in *State v. Edith Mae Gillman*, No. M2005-01863-CCA-R3-CD, 2006 WL 2960598 (Tenn. Crim. App. Oct. 18, 2006), this Court reversed a trial court's order revoking probation because the appellant was not on notice that admitting guilt was a criterion for compliance with the treatment program. *Id.* at *7. When doing so, we stated, "[I]t appears that successful completion of a sexual offender program wherein guilt must be admitted *may* be a condition of probation." *Id.* at *6 (emphasis added). Looking to other states for guidance, we found "where the trial court failed to include specific probation instructions requiring admissions of guilt, reticence does not constitute a violation of probation." *Id.* We, however, stopped short of requiring the defendant to explicitly agree on the record that he was accepting probation on the basis he would admit to his sex crimes. *Id.* at *6 n.3.

The present matter is factually distinct from *Edith Mae Gillman*. In *Edith May Gillman*, the defendant repeatedly admitted to the commission of the charged sex crime during the course of treatment and would later recant her admissions. Here, Mr. Welch repeatedly gave the defendant the opportunity to offer a credible explanation for his actions, and the defendant could not do so. According to Mr. Welch, had the defendant been able to give a credible explanation that did not involve the commission of a sex crime, he would have favorably discharged the defendant from the program. This would have fulfilled the terms of terms of the defendant's probation without the admission of guilt. The defendant, however, was unable to do this, and ultimately discharged from treatment due to his dishonesty and failure to participate in treatment. The defendant had ample notice of these probation requirements.

## II.    Notice of Probation Violation

The defendant next argues he did not receive proper notice of the probation violation relied on by the trial court when revoking his deferred judicial diversion. Trial courts follow the same procedure for terminating a defendant's deferred diversion used for revocation of probation. *Alder v. State*, 108 S.W.3d 263, 266 (Tenn. Crim. App. 2012). Trial courts have statutory authority to revoke probation upon a finding by a preponderance of the evidence the defendant violated a condition of probation. Tenn. Code Ann. § 40-35-311(e). To overturn the trial court's revocation, the defendant must show the trial court abused its discretion. *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). "In order to find such an abuse, there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Id.* (citing *Harkins,* 811 S.W.2d at 82). The proof of a probation violation is sufficient so long as it allows the trial court to make a conscientious and intelligent judgment. *Harkins*, 811 S.W.2d at 82.

Both the Tennessee Supreme Court and the United States Supreme Court have recognized that "the full panoply of rights due a defendant" in criminal prosecutions do not apply to probation revocation hearings. *See Black v. Romano,* 471 U.S. 606, 613 (1985) (stating that "the flexible, informal nature of the revocation hearing, . . . does not require the full panoply of procedural safeguards associated with criminal trial"); *Bledsoe v.. State,* 387 S.W.2d 811, 814 (1965) (stating that "the defendant [in a probation revocation hearing] is not entitled to the same guarantees as a person who is not convicted and is merely on trial upon an accusation of crime"). Such a defendant is instead entitled to the "minimum requirements of due process," including: (1) written notice of the claimed violation(s); (2) disclosure of the evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses (unless good cause is shown for not allowing confrontation); (5) a neutral and detached hearing body, members

of which need not be judicial officers or lawyers; and (6) a written statement by the fact-finder regarding the evidence relied upon and the reasons for revoking probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973).

In 1996, the legislature enacted the Tennessee Standardized Treatment Program for Sex Offenders in an effort to standardize "the evaluation, identification, treatment, and continued monitoring of sex offenders at each stage of the criminal justice system, so that the offenders will curtail recidivistic behavior, and so that the protection of victims and potential victims will be enhanced." Tenn. Code Ann. § 39-13-702. Accordingly, offenders who are placed on probation as part of a negotiated settlement of their case are required to submit to an evaluation for treatment. Tenn. Code Ann. § 39-13-705(b). Any resulting plan of treatment then becomes a condition of probation. *Id.*

In the present matter, as a condition of his probation, the defendant agreed to register as a sex offender and abide by the Specialized Probation Conditions for Sex Offenders, including attendance and participation in an approved treatment program for the duration of probation or until being notified in writing of his satisfactory completion of treatment. After receiving notice of the defendant's discharge from treatment due to his noncompliance with treatment goals, Ms. Forbes requested a revocation warrant. The trial court then issued and served the defendant with an Affidavit Violation of Diversion that provided the following notice of his alleged probation violations:

> Deponent further states that the aforesaid has not properly conducted himself but has violated the conditions of his probation in material respect by:
>
> Probation Rule No. 12: If convicted of a sex offense, I will abide by the Specialized Probation Conditions for Sex Offenders as adopted by the Board of Probation and Parole.
>
> Specialized Condition No. 3. which states: I will attend, participate in, and pay for treatment or counseling with an approved treatment provider as deemed necessary by the Board, the Court, or my Officer. I will continue in such treatment as instructed for the duration of my supervision unless my treatment provider, in consultation with my Officer, instructs me in writing that I have satisfactorily completed treatment.
>
> Violation: On 02/17/2016, Offender was discharged from the sex offender specific treatment for noncompliance with treatment goals.

During the subsequent revocation hearing, the State called two witnesses: Jessica Forbes and Barry Welch. The defendant had the opportunity to cross-examine each witness and did. The defendant also had the opportunity to call witnesses on his own behalf but did not. The defendant had access to the discharge letter relied on by Ms. Forbes when requesting the revocation warrant and even asked the trial court to place that letter under seal, and the trial court granted the request. After considering the testimony and evidence presented during the hearing, the trial court noted that Probation Rule Number 10, mandating the defendant register as a sex offender, also required sex offender treatment. Following the hearing, the trial court entered its written order revoking the defendant's deferred diversion and extending his probation for six months to allow for completion of treatment. When doing so, the trial court did not mention Probation Rule Number 10 and instead relied upon the defendant's noncompliance with the same Specialized Probation Conditions for Sex Officers requiring the defendant to "attend, participate in, and pay for treatment or counseling" and to continue in such treatment for the duration of his probation or until receiving written notice of satisfactory completion referenced in the revocation warrant.

The revocation warrant put the defendant on notice of the charges against him, namely that his discharge from treatment for noncompliance with treatment goals violated Probation Rule Number 12 and Special Condition Number 3. When orally ruling, the trial court noted the defendant's premature discharge from treatment also violated Probation Rule Number 10, which required the defendant to register as a sex offender. However, trial courts speak through their written orders. *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015). In its written order revoking the defendant's deferred diversion and extending his probation, the trial court relied on Special Condition Number 3. Moreover, the purpose of the written notice requirement "is to provide forewarning to the person sought to be charged of the existence of the particular facts in question or to enable him of acquiring a means of knowing it." *State v. James C. Wolford*, No. 03C01-9708-CR-00319, 1999 WL 76447, at *7 (Tenn. Crim. App. Feb. 18, 1999). As demonstrated by his simultaneous request to be relieved of the requirement that he attend sex offender treatment for the duration of his probation, the defendant undoubtedly knew in advance of his revocation hearing that his untimely discharge from treatment was the basis for his alleged probation violation. The defendant is not entitled to relief on this basis.

## III. Objective Requirements of Probation

Finally, the defendant argues he complied with the objective requirements of treatment, and the trial court abused its discretion when revoking his probation based on the subjective decision of the treatment provider. In response, the State contends the trial court properly exercised its discretion when revoking the defendant's probation and

deferred diversion after finding he had been dishonest with his treatment provider. We agree with the State.

As discussed supra, Tennessee Code Annotated section 39-15-705 required the defendant to submit to an evaluation for sex offender treatment, and the subsequent plan of treatment was to become a condition of probation. The probation order also required the defendant to abide by the Specialized Probation Conditions for Sex Offenders, which included attendance and participation in an approved treatment program for the duration of probation or until being notified in writing of his satisfactory completion of the treatment program. Relying on *State v. William A. Marshall*, No. M2001-02954-CCA-R3-CD, 2002 WL 31370461 (Tenn. Crim. App. Oct. 14, 2002), the defendant claims he complied with all objective requirements of treatment and was arbitrarily discharged due to Mr. Welch's subjective belief he was dishonest about the veracity of the State's charges against him. We disagree. Unlike the defendant in *William A. Marshall,* the defendant in the present matter did not comply with the objective standards of treatment and, therefore, did not satisfy the probation condition requiring treatment.

In *William A. Marshall*, the trial court examined the meaning and effect of the term "complete" with respect to sex offender treatment. *Id.* at *7. This Court found Marshall completed treatment despite his therapist's subjective belief he had not internalized the dogma and may be a continued threat to the community, thus requiring additional treatment. *Id.* There, the treatment program did not have a finite deadline, and no participants had ever completed it. *Id.* Marshall's progress in the program, however, was on track with other participants. *Id.* Moreover, Marshall had completed a total of ten modules of treatment, including the "preventative relapse module." *Id.* This Court acknowledged that the General Assembly has recognized "'some sex offenders cannot or will not respond to treatment,'" and "'it did not intend to imply that all sex offenders can be successful in treatment'" by enacting the Tennessee Standardized Treatment Program for Sex Offenders. *Id.* at *8; citing Tenn. Code Ann. § 39-13-702(b). This Court held that due to Marshall's completion of all objective standards of the treatment program, while perhaps not cured, he completed treatment and, therefore, fulfilled the condition of his probation requiring it. *Id.* at *9.

This Court has subsequently analyzed and distinguished *William A. Marshall* on multiple occasions. For example, in *State v. Joe Shelton Berry*, No. M2004-03052-CCA-R3-CD, 2005 WL 2438390 (Tenn. Crim. App. Sept. 27, 2005), we affirmed the trial court's revocation of probation after Berry, who pled no contest to rape, was discharged from the mandated sex offender treatment class due to ongoing deceptive activity that prevented him from being assessed for future risk and completing the program. *Id.* at *3. The treatment provider testified at the revocation hearing that during group therapy sessions, Berry would "'almost [tell] the truth but then refuse to'" and "vaguely

acknowledge his criminal actions but later deny them," so he was discharged for not fully participating and holding back the rest of the group. *Id.* at *1-2. Berry "refused to be honest and try to work out his problems," so the treatment provider refused to allow him back into the program. *Id.* at *3. This Court, relying on the treatment provider's testimony and the trial court's accreditation of that testimony, concluded the record contained sufficient evidence to support the trial court's finding that Berry did not meet the objective standards of treatment. *Id.* When doing so, this Court factually distinguished the case from *William A. Marshall* because, despite attending every session, Berry's "lack of candor, lackadaisical attitude, and inadequate participation" prevented him from fulfilling the objective standards of treatment. *Id.*

In *State v. Jackie Lee Holliman*, No. M2005-02139-CCA-R3-CD, 2007 WL 316406 (Tenn. Crim. App. Sept. 19, 2006), we again considered whether the trial court properly found Holliman violated his probation where he was discharged from sex offender treatment due to his inability to progress out of the initial stage of treatment after one and a half years of therapy. *Id.* at *3-4. At the revocation hearing, the treatment provider offered testimony regarding Holliman's dishonesty during group therapy and disparaging comments made about his victim, both of which prevented him from progressing to the "victim empathy" stage of treatment. *Id.* This Court found that unlike the defendant in *William A. Marshall,* who had completed all ten modules of treatment before his treatment provider determined he could not be discharged because he had not been cured, the record lacked evidence Holliman had completed any objective portion of his treatment program. *Id.* at *9. Relying on *Joe Shelton Berry*, this Court additionally noted "he was dismissed from the treatment program for cause, and the record supports the trial court's reliance upon the defendant's blameworthy failure at treatment as a basis for revocation." *Id.* Accordingly, we held the record supported the trial court's finding Holliman did not comply with the court-ordered condition that he receive sex offender treatment. *Id.*

Later, in *State v. Reams*, this Court considered the revocation of Reams' probation for driving on a suspended license and being discharged from sex offender treatment due to dishonesty with his treatment provider. *Reams*, 265 S.W.3d at 428. After pleading guilty to two counts of attempted aggravated sexual battery and one count of sexual battery, Reams received an effective sentence of eight years of probation, and the trial court ordered sex offender treatment as a condition of probation. *Id.* at 425. Reams' sex offender treatment provider placed him in level two group therapy following his initial assessment. *Id.* One of the goals of treatment required Reams to "admit to 100 percent of the elements of the offenses described by the victim." *Id.* at 429. Due to his dishonesty regarding his contact with the victim, the treatment provider felt Reams "had not advanced in meeting the treatment program's goals" and demoted him to level one therapy. *Id.* at 428. Reams did not progress as quickly as expected after demotion. *Id.*

- 13 -

After giving information during a polygraph examination that conflicted with information given during group therapy and being unable to provide an explanation for the conflict, the treatment provider terminated Reams from the program. *Id.* at 429. Following service of a revocation warrant and a hearing, the trial court revoked his probation and ordered him to serve his sentence in confinement. *Id.* at 430.

One of the issues considered by this Court on appeal was again whether the trial court erred in revoking Reams' probation because he had complied with all objective standards of sex offender treatment. *Id.* at 432. Reams argued *William A. Marshall* controlled, and the State argued *Joe Shelton Berry* applied. *Id.* at 432-33. With respect to Reams' compliance with the treatment program, we noted he "attended his treatment classes; participated as far as turning in a homework assignment and confronting another defendant, who also attended treatment; and paid for treatment, although he was behind on payments." *Id.* at 433. However, like the defendant in *Joe Shelton Berry*, Reams had also been demoted because his dishonesty was holding back the group. *Id.* Accrediting the testimony of the treatment provider who opined Reams could not satisfy the first step of treatment due to his repeated dishonesty, we held the trial court did not abuse its discretion when finding the defendant violated the terms of his probation by getting discharged from sex offender treatment due to his own "'blameworthy failures at treatment.'" *Id.* at 432-433 (quoting *Jackie Lee Holliman*, 2007 WL 316406).

In the present matter, our review of the record reveals that like the defendants in *Joe Shelton Berry*, *Jackie Lee Holliman*, and *Reams*, the defendant has not fulfilled the objective standards of treatment. At the revocation hearing, Mr. Welch testified that the defendant's treatment goals included admission to one-hundred percent of the elements of the offense, completion of a written statement of responsibility describing the elements of his crime, completion of a sexual autobiography to be verified by polygraph examination, and completion of a sexual history. Unlike the defendant in *William A. Marshall*, who completed all ten modules of treatment prior to being discharged based on his inability to be cured, Mr. Welch discharged the defendant prior to meeting a single goal of treatment. This discharge did not occur due to a subjective belief the defendant could not be cured. Rather, Mr. Welch discharged the defendant because he refused to admit to or discuss the State's charges against him, so he could not progress in treatment.

Like attendance and payment of treatment fees, the admission of guilt, completion of a written statement of responsibility, completion of a sexual autobiography, and completion of a sexual history were also objective requirements of the defendant's treatment. *See State v. Edith Mae Gillman*, No. M2005-01863-CCA-R3-CD, 2006 WL 2960598, at *7 (Tenn. Crim. App. Oct. 18, 2006) (noting that along with attendance and participation, the admission of guilt is an objective measure of compliance with sex offender treatment). Moreover, the trial court accredited Mr. Welch's testimony that the

- 14 -

defendant's dishonesty impeded his ability to progress in treatment by relying on it when revoking the defendant's probation and deferred diversion, and this Court will not reweigh evidence on appeal. The record contains substantial evidence to support the trial court's finding the defendant violated his probation when he was discharged from the treatment program for failing to meet program goals. The defendant is not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE